**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

LYDIA CRANDALL,

Plaintiff,

vs. No. 1:23-CV-00523-WJ-LF

NEW MEXICO SEVENTH JUDICIAL DISTRICT COURT
and ADMINSTRATIVE OFFICE OF THE COURTS,

Defendant.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**THIS MATTER** is before the Court on Defendants' Motion for Summary Judgment (**Doc. 17**). In this motion, Defendants – the New Mexico Seventh Judicial District Court and the Administrative Office of the Courts – ask this Court to grant summary judgment on Plaintiff's claim of religious discrimination under Title VII of the Civil Rights Act the New Mexico Human Rights Act ("NMHRA"). The Court, having considered the parties' written arguments and reviewed the applicable case law, finds that Defendants' Motion for Summary Judgment (**Doc. 17**) is well-taken and is therefore **GRANTED**.

**BACKGROUND**[1]

[1]The Court takes the background facts from the parties' briefs and those background facts are supported by evidence in the record as stated by the parties. The background facts are either undisputed, or, where genuinely disputed, are viewed in the light most favorable to Plaintiff, the party opposing the grant of summary judgment. *See In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 44 F.4th 959, 964 (10th Cir. 2022). The parties also raised materiality/relevancy objections to each other's facts. The facts included here have been deemed to be material by the Court and are not disputed unless otherwise noted.

This case involves Plaintiff Lydia Crandall's request for a religious accommodation from the COVID-19 vaccination requirement during an interview with the New Mexico Seventh Judicial District Court.[2]

On or about March 11, 2020, the Governor of the State of New Mexico issued the initial Executive Order in which she declared a Public Health Emergency based on the COVID-19 pandemic. **Doc. 17-2**. Subsequently, the New Mexico Supreme Court issued a series of Orders governing the conduct of the New Mexico Judiciary, its officers, and employees during the COVID-19 pandemic. **Doc. 17-1 at 3**. On August 16, 2021, the Supreme Court issued the following order regarding vaccination requirements for new employees:

> All offers of employment with the New Mexico Judiciary made on or after August 16, 2021, shall include as a condition of employment that the new employee shall be fully vaccinated - - as defined in the [workplace Safety COVID-19 Guide] - - before the new employee' first day of employment. All judicial entities shall include the mandatory vacation requirement in this section in postings for all new job openings.

**Doc. 17-3 at 3.**

To assist in formulating and enforcing the COVID-19 guidelines for the Judiciary, the Supreme Court established an Emergency Response Team chaired by the Chief Justice and including the Director of the Administrative Office of the Courts ("AOC") and several AOC Human Resources Personnel. **Doc. 17-1 at 3**. This team issued a document entitled "Workplace Safety COVID-19 Guide." ***Id.*** This Workplace Safety COVID-19 Guide was revised on August 1, 2022, and expounded on the Supreme Court's August 16, 2021, Order. **Doc. 17-4**. According to this guide, a prospective employee's request for accommodation regarding the COVID-19 vaccination requirement should be discussed with AOC's Human Resources Department. ***Id.* at 2.**

[2]The New Mexico Seventh Judicial District consists of the state district courts in Catron County, Sierra County, Socorro County, and Torrance County as well as the Magistrate Courts in Moriarty, Reserve, Socorro, and Truth or Consequences.

According to Lilia Romero, the Deputy Court Executive Officer, the AOC Human Resources Department made the decision whether to grant a requested accommodation. **Doc. 17-1 at 4**.

In 2022, the Administrative Office of the Courts posted a notification of a job opening for a full-time, classified position as a Judicial Specialist 2, in the Magistrate Court of Torrance County, New Mexico, in Moriarty, to work under the Court Manager (Maggie Gipson), who was supervised by the Deputy Court Executive Officer for the Seventh Judicial District, Lilia Romero. **Doc. 17-5**. The posted notice of vacancy included a COVID-19 vaccination requirement in accordance with the Supreme Court's August 16, 2021, Order. ***Id.***

The Judicial Specialist 2 position required the employee to interact on a regular basis with the public, co-workers, judges, attorneys, and law enforcement personnel, including serving as court monitor, maintaining a cash till, and giving case information to litigants and counsel. ***Id.***

At the time of Judicial Specialist 2 Vacancy, Lilia Romero was employed as the Deputy Court Executive Officer for the Seventh Judicial District. **Doc. 17-1 at 1**. As Deputy Court Executive Officer, Lilia Romero supervised the court managers of four different Magistrate Courts in the Seventh Judicial District in the hiring of their employees. ***Id.* at 2**.

The Seventh Judicial District's hiring process for Magistrate Court employees consisted of posting job vacancies and descriptions of duties on the judiciary website; reviewing the applications received; conducting interviews of the applicants; and ranking the applicants. ***Id.*** If the panel agreed on a particular applicant, Lilia Romero would contact the applicant's references and conduct a brief background check on him or her. ***Id.*** Once Ms. Romero received good references and a clean background, she would discuss the applicant with the Court Executive Offers, Jason Jones, and the Chief Judge of the District Court. ***Id.*** If Mr. Jones and the Chief Judge agreed on the applicant, the court would extend a written offer of employment to the person. ***Id.***

The Seventh Judicial District's interview process involved a three-person panel: Lilia Romero as the lead interviewer, the Court Manager, and a Magistrate Judge. ***Id.*** Ms. Romero conducted each interview in the same manner. ***Id.* at 5**. After a summary of the job functions and a review of the interview process, Ms. Romero would ask all applicants the same twenty-one standardized questions. **Doc. 17-6**. During the interview, Ms. Romero would record a summary of the applicant's answers in writing to each of the twenty-one questions. **Doc. 17-1 at 5**.

Plaintiff Lydia Crandall, along with two other applicants, submitted timely applications for the Judicial Specialist 2 vacancy. ***Id.*** Ms. Romero scheduled the three applicants for separate interviews via Google Meet on October 28, 2022. ***Id.*** The interviews were conducted by a three-person panel consisting of Ms. Romero as the lead interviewer, Court Manager Maggie Gipson, and Magistrate Judge White. ***Id.***

Early in Plaintiff Crandall's interview, while Ms. Romero was explaining the job functions, she asked Plaintiff if she would get the COVID-19 vaccination. Plaintiff responded with a "no." Plaintiff then asked to seek a religious accommodation. **Doc. 17-8 at 2**. Ms. Romero then said that she does not make those decision that the Administrative Office of the Courts [Santa Fe] handled those requests,[3] and that Plaintiff could try but those requests were being denied. ***Id.*** Plaintiff said that was discriminatory, and Ms. Romero asked if Plaintiff wanted to continue the interview or terminate it. ***Id.*** Plaintiff said she wanted to continue it, but because she would not be considered, it was pointless and declined to complete the interview. ***Id.***

At the time of Plaintiff's interview, Ms. Romero was aware of only one request for accomodation of the vaccination requirement made by one applicant (on medical and religious

---

[3] It is unclear whether Ms. Romero said "Santa Fe" or the "Administrative Office of the Courts," but Plaintiff understood that Ms. Romero was referring to the Administrative Office of the Courts. **Doc. 17-8 at 2**.

grounds), which request was denied. **Doc. 17-1 at 6**. In that case, the applicant completed the rest of the interview, and the panel ranked her as the most qualified applicant. ***Id.***[4]

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A disputed fact is 'material' if it might affect the outcome of the suit under the governing law, and the dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Est. of Beauford v. Mesa Cnty., Colorado*, 35 F.4th 1248, 1261 (10th Cir. 2022) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact, but once the movant has done so, the burden shifts to the non-movant to establish a genuine issue of fact." *Georgelas v. Desert Hill Ventures, Inc.*, 45 F.4th 1193, 1197 (10th Cir. 2022). The movant may satisfy its initial burden by producing affirmative evidence negating an essential element of the non-movant's claim. *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002). In opposing summary judgment, the non-movant cannot rest on mere allegations but "must bring forward specific facts showing a genuine issue for trial." *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (internal quotation marks omitted). "The summary judgment standard requires [the Court] to construe the facts in the light most favorable to the non-movant and to draw all reasonable inferences in its favor." *Beauford*, 35 F.4th at 1261 (citing *Lance v. Morris*, 985 F.3d 787, 793 (10th Cir. 2021)). The Court's function at this stage "is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249. Further, the Court need not accept

[4] The final section of this opinion outlines the facts concerning Plaintiff Crandall's religious beliefs and objections to the COVID-19 vaccine.

allegations contradicted by objective evidence. *Beauford*, 35 F.4th at 1261 (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

## DISCUSSION

### I. Defendants are entitled to summary judgment because Plaintiff Crandall cannot establish a prima facie case of religious discrimination under either Title VII or the NMHRA.

Title VII of the Civil Rights Act of 1964 prohibits two categories of employment practices. It is unlawful for an employer:

> (1) to fail or refuse to hire or discharge any individuals, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race color religion, sex or national origin."

42 U.S.C. § 2000e–2(a). "These two proscriptions, often referred to as the disparate treatment provision and the disparate impact provision, are the only cause of action under Title VII." *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 771 (2015). Although Plaintiff's arguments and complaint do not clarify Plaintiff's specific claim under Title VII, it appears that she is asserting what the United States Supreme Court termed a "disparate-treatment claim based on failure to accommodate" in the *Abercrombie* case.[5] The legal standards for this type of Title VII claim are set forth in the *Abercrombie* case.

In *Abercrombie,* the Supreme Court specifically addressed whether Title VII prohibits an employer from refusing to hire an applicant to avoid accommodating a religious practice, even if the applicant has not informed the employer of the need for a religious accommodation. 575 U.S.

[5]A failure to accommodate claim brought under Title VII is a claim for disparate-treatment and must ultimately satisfy the general elements of a disparate-treatment claim. *Tabura v. Kellogg USA*, 880 F.3d 544, 549 n.3 (10th Cir. 2018) (citing *Abercrombie*, 575 U.S. at 771–72).

at 770. In answering this question, the Court highlighted that "[t]he disparate-treatment provision forbids employers to: "(1) fail. . . to hire" an applicant (2) "because of" (3) "such individual's . . . religion" (which includes his religious practice)." *Id.* at 772. The Court pointed out that this disparate-treatment provision does not require the employer to have actual knowledge of the need for accommodation. *Id.* at 773.

Since the disparate-treatment provision is silent on a knowledge requirement, the Court held that an applicant need not prove that the employer had actual knowledge of the applicant's need for accommodation; it is enough to show that the need for accommodation was a motivating factor in the employer's employment decision. *Id.* To elaborate on its holding, the Supreme Court offered a key comparison:

> An employer who has actual knowledge of the need for an accommodation does not violate Title VII by refusing to hire an applicant if avoiding that accommodation is not his *motive*. Conversely, an employer who acts with the motive of avoiding accommodation may violate Title VII even if he has no more than an unsubstantiated suspicion that accommodation would be needed.

*Id.* The Court then concluded with the following rule: "the rule for disparate-treatment claims based on a failure to accommodate a religious practice is straightforward: An employer may not make an applicant's religious practice, confirmed or otherwise, a factor in employment decisions." *Id.*

Considering the *Abercrombie* case, a Plaintiff asserting a disparate-treatment claim based on failure to accommodate under Title VII must establish the following elements: (1) Defendants failed to hire her, (2) because of, (3) her religion, which includes her religious practices.

In the instant case, Defendants offered undisputed evidence that Plaintiff Crandall voluntarily withdrew from the interview, thereby failing to answer any of the twenty-one standardized questions posed by Ms. Romero. **Doc. 17-8 at 2**. It is also undisputed that the

interview panel would have ranked Plaintiff based on her interview and responses to the twenty-one questions before determining the most qualified applicant for the position. **Doc. 17-1 at 2**. Once determining the most qualified applicant, Ms. Romero would then approach the Court Executive Officer and the Chief Judge of the District Court, who would make the final employment decision on whether to hire the applicant. ***Id.*** This undisputed evidence undermines two elements of Plaintiff's prima facie claim of religious discrimination: that there was a failure to hire and that any such failure to hire was because of Plaintiff's religion or religious practices.

First, regarding the alleged failure to hire, the Tenth Circuit has not addressed whether a plaintiff who voluntarily withdraws from the hiring process can establish a prima facie disparate-treatment claim under Title VII. Other courts, however, have addressed similar issues. For instance, the Fourth Circuit addressed a similar issue in *Smith v. Bd. of Trustees, St. Mary's College of Maryland*, 155 F.3d 561 (4th Cir. 1998) (unpublished). In *Smith*, the plaintiff withdrew her application for a promotion before the Board of Trustees, the final decision-maker, could review it. *Id.* at *2. Although a jury initially ruled in her favor on a Title VII failure-to-promote claim, the district court set aside the verdict, reasoning that Title VII protects against discrimination in final employment decisions, not intermediate steps. *Id.* The Fourth Circuit affirmed the district court's decision to set aside the jury verdict, agreeing with the district court's reasoning. *Id.*

The Eastern District of Virginia also addressed a similar issue in *Miller v. Gruenberg*, No. 1:16-CV-856, 2017 WL 1227935 (E.D. Va. Mar. 31, 2017). In *Miller*, the plaintiff applied for a promotion for a Financial Economist position with the Federal Deposit Insurance Corporation (FDIC). *Id.* at *3. After submitting the application, the plaintiff was informed that he would need to present recent research, but his most recent work was from 2004. *Id.* The selecting official told him he could present both the 2004 research and his ongoing projects. *Id.* However, the plaintiff ultimately withdrew his application after accepting a different position. *Id.*

The plaintiff later filed a Title VII discrimination claim, arguing that the selecting official induced him to withdraw his application by imposing an unreasonable requirement and that the defendant knew younger applicants with recent research were given three months' notice of the recent research requirement. *Id.* at *6. The district court dismissed the claim for failure to state a claim, reasoning that "[a] claim cannot be stated under Title VII for the voluntary withdrawal of an application prior to a final employment decision." *Id.* On appeal, the Fourth Circuit affirmed the district court's decision. *Miller v. Gruenberg*, 699 F. App'x 204 (4th Cir. 2017) (unpublished).

The Fifth Circuit has also highlighted the importance of a final employment decision when establishing a prima-facie failure-to-hire claim under Title VII. In *Bowers v. Principi*, the plaintiff applied for a position made temporarily available when the Veteran Affairs ("VA") employee holding the position was placed on active military duty. 172 F. App'x 623, 625 (5th Cir. 2006) (unpublished). The VA notified the plaintiff that he was not selected for the position when the original employee's military duty terminated early, and the employee returned to the position. *Id.* at 626. The Fifth Circuit affirmed the district court's grant of summary judgment on the Title VII failure-to-hire claim, reasoning that Plaintiff "failed to establish that the cancellation of a vacancy under these conditions constitutes an adverse employment action taken against him since the vacancy, which was only temporary, ended and no employment decisions were made." *Id.*

While these cases hold only persuasive authority, the Court finds their reasoning compelling, particularly because the reasoning aligns with the Supreme Court's opinion in *Abercrombie*. In *Abercrombie*, the Supreme Court stated, "the rule for disparate-treatment claims based on a failure to accommodate a religious practice is straightforward: An employer may not make an applicant's religious practice, confirmed or otherwise, a factor in *employment decisions*." 575 U.S. at 773 (emphasis added). Therefore, consistent with the aforementioned cases as well as the *Abercrombie* case, an *employment decision* is essential to establish a prima facie disparate-

treatment claim under Title VII, and a voluntary withdrawal from the hiring process or the expiration of a job opening are not employment decisions for Title VII purposes.[6]

Consequently, Plaintiff Crandall cannot demonstrate that Defendants failed to hire her, as she withdrew from the hiring process before Defendants made an employment decision regarding her application. By withdrawing from the interview, Plaintiff effectively removed herself from consideration, rendering it impossible for Defendants to either hire or reject her. Put simply, Defendants did not fail to hire Plaintiff; instead, Plaintiff withdrew from consideration.

For similar reasons, Plaintiff Crandall cannot establish that Defendants failed to hire her "because of" her request for a religious accomodation. The phrase "because of" in anti-discrimination laws generally requires proof of but-for causation. *Abercrombie*, 575 U.S. at 772. Title VII relaxes this standard, prohibiting even a protected characteristic from being a "motivating factor" in an employment decision. *Id.* Specifically, "an individual's actual religious practice may not be a motivating factor in failing to hire, in refusing to hire, and so on." *Id.*

As Defendants have established through undisputed evidence, Plaintiff's withdrawal from the interview ended the hiring process for her before the panel could rank applicants, determine the most qualified applicant, and present the applicant to the Court Executive Officer and the Chief Judge of the District Court, who make the final decision on whether to hire an applicant. Since Plaintiff withdrew in the middle of the hiring process, Defendants could not reach a final employment decision about Plaintiff. And a decision must exist for any factor—protected or otherwise—to motivate it. Therefore, because Defendants made no final employment decision—

[6] In *Exby-Stolley v. Bd. of Cnty. Comm'rs*, the Tenth Circuit held that, unlike a failure-to-accommodate claim under the Americans with Disabilities Act (ADA), a disparate-treatment claim under Title VII for failure to accommodate requires an adverse employment action. 979 F.3d 784, 793 n.3 (10th Cir. 2020). This Court considers an employment decision and an adverse employment action to be the same requirement.

or any employment decision—Plaintiff cannot establish that Defendants failed to hire her "because of" her request for a religious accommodation.

In sum, based on the undisputed material facts, Plaintiff cannot establish a prima facie disparate-treatment claim based on a failure to accommodate under Title VII, specifically Plaintiff cannot establish that Defendant's failed to hire her and that any such failure to hire was "because of" her request for religious accommodation. Significantly, a prima facie claim of religious discrimination under the NMHRA also requires Plaintiff to establish both the "refusal to hire" and "because of" elements. Therefore, Plaintiff's claim also fails under the NMHRA for the same reasons it fails under Title VII. *See* NMSA 1978 § 28-1-7(A) ("It is an unlawful discriminatory practice for an employer, unless based on a bona fide occupational qualification or other statutory prohibition, to refuse to hire . . . any person otherwise qualified because of . . . religion.").

Additionally, the NMHRA requires that an applicant be "otherwise qualified" for the position. In *Kitchell v. Public Service Co.*, the New Mexico Supreme Court relied on federal authority in interpreting the phrase "otherwise qualified." 1998-NMSC-051, ¶¶ 5–8, 126 N.M. 525, 972 P.2d 344. This Court similarly looks to federal authority in determining whether Plaintiff Crandall is "otherwise qualified" under the NMHRA. In *Kemery v. Johnson*, the Southern District of New York addressed whether an applicant who failed to submit a completed application was "otherwise qualified." 900 F. Supp. 677, 684 (S.D.N.Y. 1995). The district court held that the applicant was not "otherwise qualified" due to the incomplete application, which was an essential requirement of the hiring process. *Id.* The district court's decision was ultimately affirmed by the Third Circuit. 101 F.3d 683 (2d Cir. 1996). Like the applicant in the *Kemery* case, Plaintiff Crandall cannot establish that she was "otherwise qualified" for the Judicial Specialist 2 position because her application was incomplete as she declined to complete the interview.

**II. There is a genuine dispute of material fact regarding whether Plaintiff has a sincerely held religious belief for Title VII purposes.**

The parties also dispute whether Plaintiff Crandall's beliefs qualify as a sincerely held religious beliefs under Title VII. As explained above, summary judgment is appropriate because Plaintiff cannot establish a prima facie case. Nonetheless, given the attention both sides gave to the question of Plaintiff's sincerely held religious beliefs, the Court will address this question briefly.

As Defendants point out, Title VII has taken on the same view of religious beliefs as that articulated in *United States v. Seeger*, 380 U.S. 163, 185 (1965). In *Seeger*, the Supreme Court explained that the task of the courts is to decide whether an individual's professed beliefs are sincerely-held and whether they are, in the plaintiff's own scheme of things, religious. *Id.* at 185. the Supreme Court also specified what does not constitute a sincerely held religious belief, emphasizing that it excludes essentially political, sociological, or philosophical views. *Id.* at 165.

According to the Equal Employment Opportunity Commission ("EEOC") the following constitutes a religious belief for Title VII purposes.

> A belief is religious for Title VII purposes if it is religious in the person's own scheme of things, *i.e.*, it is a sincere and meaningful belief that occupies in the life of its possessor a place parallel to that filled by. . . God. An employee's belief or practice can be religious under Title VII even if the employee is affiliated with a religious group that does not espouse or recognize that individual's belief or practice, or if few—or no—other people adhere to it.

EEOC Compliance Manual § 12–I(A)(1).[7]

Defendant argues that Plaintiff's beliefs are not religious beliefs, relying on Plaintiff's deposition where she acknowledged that her church has no specific doctrine or teaching regarding

---

[7]The Supreme Court applied this same test when determining whether a registrant is entitled to the conscientious objector exemption. *See Welsh v. United States*, 398 U.S. 333, 339 (1970) ("The test might be stated in these words: A sincere and meaningful belief which occupies in the life of its possessor a place parallel to that filled by the God of those admittedly qualifying for the exemption comes within the statutory definition.)

vaccinations and leaves such decisions to individual members. **Doc. 17-8 at 4**. Defendant also points to Plaintiff's testimony that she believes vaccines are harmful, unnecessary, and that the risks outweigh the benefits. ***Id.* at 5**. Based on these statements, Defendants argue that Plaintiff's beliefs are personal, scientific, and secular views rather than religious beliefs.

Plaintiff, however, also testified in her deposition that, although her church (Albuquerque Revival Church) does not require her to refrain from vaccinations, her decision is rooted in her personal relationship with God. ***Id.*** She also stated that she opposes vaccines because she believes they are harmful and unnecessary, based on the wisdom God has given her in recent years. ***Id.*** Plaintiff further explained that God provided humans with strong immune systems, making vaccines unnecessary, and that vitamins, herbs, and natural supplements can enhance and strengthen immune systems. ***Id.* at 4**. Additionally, as a pro-life individual, Plaintiff opposes vaccines due to her belief that they contain ingredients derived from aborted fetal cells. ***Id.* at 5**.

Thus, the record indicates that Plaintiff objects to vaccines based on her personal relationship *with God*, believing that humans possess strong immune systems *endowed by God*, which makes vaccines unnecessary, and on her pro-life stance opposing vaccines that contain ingredients derived from aborted fetal cells. The Court concludes that a reasonable factfinder could determine these beliefs are sincerely held religious beliefs; however, a reasonable jury could just as easily find that Plaintiff's beliefs are not sincerely held religious beliefs. Accordingly, there is a genuine dispute of material fact as to whether Plaintiff's beliefs are sincerely held religious beliefs, precluding summary judgment on this ground.[8]

---

[8] The Tenth Circuit has also indicated that courts should refrain from determining whether a plaintiff has a sincere religious belief at the summary judgment stage. *See Kay v. Bemis*, 500 F.3d 1214, 1219 (10th Cir. 2007) ("[T]he issue of sincerity can rarely be determined on summary judgment.").

The existence of a factual dispute regarding whether Plaintiff's beliefs are sincerely held religious beliefs does not alter this Court's conclusion that summary judgment is warranted in this case. Plaintiff cannot establish a prima facie case of discrimination, having withdrawn from the interview process before Defendants made a final employment decision. Therefore, despite the fact question regarding Plaintiff's beliefs, summary judgment on all Plaintiff's claims remains appropriate.

## CONCLUSION

Given that Plaintiff Crandall cannot establish a prima facie case of religious discrimination under either Title VII or the NMHRA, the Court hereby **GRANTS** Defendants' Motion for Summary Judgment (**Doc. 17**) on Plaintiff Crandall's only claim against Defendants. Accordingly, this matter is hereby **DISMISSED WITH PREJUDICE**. Further, it ordered that Defendants Motion to Strike Plaintiff's Jury Demand (**Doc. 31**) is **DENIED** as **MOOT**, based on the Court's granting Defendant's Motion for Summary Judgment. A Rule 58 Judgment shall issue separately.

**IT IS SO ORDERED.**

**/s/**

______________________________
CHIEF UNITED STATES DISTRICT JUDGE